UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS J. O'LOUGHLIN,<br><br>        Plaintiff<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY<br>and<br>ANNE McCALL<br>and<br>MICHAEL MULHERN,<br><br>        Defendant | C.A. No. 04-10257 MEL |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS OF DEFENDANTS MICHAEL MULHERN AND ANNE MCCALL

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendants Anne McCall ("McCall") and Michael Mulhern ("Mulhern") submit this memorandum in support of their Motion to Dismiss the above-captioned Complaint.[1] As set forth in detail below, the allegations in the Complaint, as to all counts related to McCall and Mulhern, must be dismissed because they fail to state a claim upon which relief can be granted.

In this case, the Plaintiff, Thomas O'Loughlin ("O'Loughlin"), alleges that *after* he "voluntarily resigned" from his position as Chief of the Massachusetts Bay Transportation Authority ("MBTA") Police Department, the MBTA declined to rehire him, apparently as a consultant, to teach a four-hour course at the MBTA Police Academy, at an alleged financial loss to him of $140. O'Loughlin was not an employee of the MBTA at the time this decision was made, and O'Loughlin does not allege that after his employment ended he entered into a new

---

[1] Although Count II is technically only against the MBTA, for retaliation in violation of 42 USC § 2000e, the arguments set forth herein would also be dispositive of that count. Count XI is also only against the MBTA.

contract or agreement with the MBTA to teach the course. Although O'Loughlin is obviously upset about the MBTA's decision not to use him as a consultant,[2] his sense of being aggrieved does not rise to the level of a violation of federal, state or common law. This case should therefore be dismissed.

## O'LOUGHLIN'S FACTUAL ALLEGATIONS

For purposes of this motion only, McCall and Mulhern adopt certain factual allegations made by O'Loughlin in his Complaint.[3] In particular, O'Loughlin alleges the following:

In August of 2002, O'Loughlin "voluntarily resigned" as Chief of the MBTA Police Department, effective October 20, 2002. (Complaint, ¶ 11.) Prior to the termination of his employment on October 20, 2002, O'Loughlin was scheduled to teach a four-hour SIDS course at the MBTA Police Academy to take place on January 2, 2003.[4] (Id. at ¶¶ 11, 16.) O'Loughlin had previously taught this course at the Academy while he was an employee of the MBTA. (Id. at ¶ 12.)

On October 29, 2002, "counsel for the MBTA was given notice" that an MBTA police officer would be filing a lawsuit against McCall and the MBTA. (Id. at ¶ 14.) Counsel "was also informed" that O'Loughlin might provide testimony or evidence, and it "was implicit" that his testimony would be adverse to the MBTA. (Id.)[5] On October 31, 2002, Anne McCall, Deputy Chief of the MBTA Police Department, "cancelled Chief O'Loughlin's service as an instructor at the MBTA Police Academy" and O'Loughlin was "refused permission" to teach at the Academy. (Id. at ¶¶ 15, 1.) On November 18, 2002, Acting Chief of Police William

---

[2] The course dealt with Sudden Infant Death Syndrome ("SIDS"), to which the plaintiff, tragically, lost a child. While the defendants have great sympathy for that personal loss, it does not bear upon the validity of his claims against them.

[3] McCall and Mulhern do not admit to the accuracy of many of O'Loughlin's allegations.

[4] Defendants contend that O'Loughlin scheduled *himself* to teach the course, but that fact is not outcome-determinative for purposes of this motion.

[5] O'Loughlin alleges that "[i]t is Plaintiff's belief that the MBTA, Michael Mulhern and Deputy McCall were promptly informed of the information transmitted to Counsel for the MBTA." This Court need not assume that any allegations based on information and belief are indeed true. See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991). Obviously, the defendants can neither confirm, nor refute, in the context of a Rule 12(b)(6) motion.

2

Fleming "reinstated" O'Loughlin to teach the SIDS Training course. (Id. at ¶ 18.) On December 13, 2002, Mulhern directed Fleming to advise O'Loughlin, who was no longer an MBTA employee, that he would not be allowed to teach at the Academy. (Id. at ¶ 21.) On that date, Fleming informed O'Loughlin that the latter would not serve as an Instructor at the Academy. (Id. at ¶ 22.) O'Loughlin did not teach at the Academy. (Id. at ¶ 26.)

## ARGUMENT

In evaluating a motion to dismiss, the Court must presume true only the well-pleaded facts contained in the complaint. Cooperman v. Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999); In re Peritus Software Services Inc. Sec. Litig., 52 F. Supp. 2d 211, 218-19 (D. Mass. 1999). The Court need not accord deference to legal conclusions or inferences not logically drawn from the well-pleaded facts. Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

Preliminarily, the causes of action asserted under M.G.L. Chapter 151B, a state statute, as well as those at common law, can be included in these proceedings only under a theory of pendent jurisdiction. Such jurisdiction may only be invoked if this Court has original jurisdiction under a federal claim against the same defendant, the federal question is substantial, and the federal and nonfederal claims are so closely related as to constitute a single cause of action. 28 U.S.C. 1367(a). For the reasons discussed below, the federal claims against McCall and Mulhern must be dismissed, and this Court should not exercise pendent jurisdiction over any remaining state claims. Because of the pendent jurisdiction issue, the counts are not discussed in the order in which pleaded. Rather, the sole federal count against each of the individual defendants is addressed first.

3

I.  **Counts III and IV Must Fail Because McCall and Mulhern Are Not Alleged to Have Deprived O'Loughlin of a Right, Privilege, or Immunity Secured by Federal Law, and Because McCall and Mulhern Are Entitled to Qualified Immunity for Suits Brought Under Section 1983.**

O'Loughlin alleges only one count each under federal law against McCall and Mulhern. Specifically, in Counts III and IV, he accuses McCall and Mulhern, respectively, in their official capacities of violation of 42 U.S.C. § 1983 (hereafter, "Section 1983" or "§ 1983"). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Setting aside the matter of whether McCall or Mulhern were acting under color of state law, O'Loughlin's § 1983 claim fails on its face for this simple reason: Nowhere in the Complaint does O'Loughlin contend that McCall or Mulhern deprived him of any clearly established right, privilege, or immunity under *federal* law. This is a necessary prerequisite to a § 1983 claim. Baker v. McCollan, 443 U.S. 137, 141 (1979) ("The first inquiry in any §1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"); Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) ("To satisfy the 'constitutional injury' requirement, the plaintiff must make a showing of a deprivation of a federally-secured right.") O'Loughlin does not even attempt to state a Title VII claim against the individual defendants, nor could he: Title VII only reaches the actual employer and does not permit for individual liability. See, e.g., Horney v. Westfield Gage Co., 95 F. Supp. 2d 29, 32-33 (D. Mass. 2000) (collecting citations, and following majority circuit court determination that "there is no individual supervisor liability under Title VII") (citations omitted). Because Title

4

VII does not impose individual liability for retaliatory failure to hire O'Loughlin as a consultant (the gist of his federal claim against the MBTA), O'Loughlin can point to no federal right or privilege upon which McCall or Mulhern has impinged. Otherwise stated, even if O'Loughlin were correct that McCall and Mulhern retaliated against him for giving favorable testimony for a plaintiff in an employment discrimination suit (which the defendants adamantly deny), his § 1983 claim against them fails as a matter of law.

In addition, the § 1983 claims against the individual defendants fail because O'Loughlin sues McCall and Mulhern only in their official capacities[6] and does not allege sufficient facts to overcome McCall's and Mulhern's qualified immunity as state officials.[7] "State officials sued in their individual capacities for monetary damages may raise a qualified immunity defense" in response to claimed violations of § 1983. Shabazz v. Cole, 69 F. Supp. 2d 177, 205-06 (D. Mass. 1999). See also May 26, 2004 Memorandum and Order of C.J. Young in Johnson v. Board of Bar Overseers of Massachusetts et al. at p. 16, appended hereto as Exhibit A. The doctrine of qualified immunity shields public officials performing discretionary public functions from civil damages. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). The standard to establish qualified immunity "is not demanding," and is ordinarily resolved prior to trial. Shabazz, 69 F. Supp. 2d at 205-06 (citing Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992)). The standard in the First Circuit is as follows:

> Qualified immunity exists insofar as defendants' conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. The requirements are twofold in the sense that: (1) a clearly established statutory or constitutional law must exist at the time of the conduct in question;

---

[6] In ¶ 39 of the Complaint, the plaintiff alleges that McCall's actions "were taken in her position as Deputy chief of the MBTA Police Department and as administrator of the MBTA Police Academy." In ¶ 43, the plaintiff alleges that Mulhern acted "in his position as General Manager of the MBTA."

[7] Because of the MBTA's quasi-public status, one could question whether the MBTA constitutes a state agency and, consequently, whether McCall and Mulhern are state employees. However, if the MBTA is not deemed a state agency, then McCall and Mulhern were not acting under color of state law, and the § 1983 claim would fail in any event.

>and (2) a reasonable official would have known that his conduct
>violated this right. Stated otherwise, public officials may avoid
>liability for monetary damages under section 1983 by showing
>either that they did not violate a right clearly established under
>federal law or that they acted with objective legal reasonableness.

Id. (internal citations omitted); Kauch v. Dep't for Children, Youth and their Families, 321 F.3d 1, 4 (1st Cir. 2003) (setting forth factors necessary for plaintiff to overcome qualified immunity).

Thus, the qualified immunity defense is a complete defense where a defendant fails even to allege that the individual "violate[d] a right clearly established under federal law." Id. Here, O'Loughlin alleges only that the MBTA violated a federal right. (Complaint, ¶ 37.) As discussed above, he does not allege that McCall or Mulhern violated 42 U.S.C. Section 2000e. Indeed, he does not allege that McCall or Mulhern violated any right(s) clearly established under *federal* law. Such an allegation is necessary for a Section 1983 claim to overcome the defense of qualified immunity. Kauch, 321 F.3d at 4 (holding that "whether or not the alleged facts establish a constitutional violation ... is a question of law" and that in order to overcome qualified immunity; the plaintiff must "specify the rights that have been interfered with.") To contend that McCall or Mulhern could be held accountable under § 1983 for the MBTA's conduct, which allegedly deprived O'Loughlin of the rights guaranteed under Title VII, would be an impermissible end run around the rule that individuals cannot be held liable under Title VII. O'Loughlin's inchoate allegation of a Section 1983 violation is improperly lodged against McCall and Mulhern and must be dismissed.[8]

Furthermore, O'Loughlin's sole federal law allegation – that the MBTA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e – cannot stand either. Title VII

---

[8] Further, McCall and Mulhern acted reasonably in light of their responsibilities to the MBTA and the MBTA Police Academy by electing not to rehire O'Loughlin, who had resigned from the Police Department. Willits v. Roman Catholic Bishop, 411 Mass. 202, 209 (1991) ("[t]he school's decision not to reappoint the plaintiff was simply a determination, within its complete discretion, to discontinue a relationship that had expired by the terms of the contract...") Indeed, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." Davis v. Scherer, 468 U.S. 183, 190 (1984).

applies only to an "employee," defining that term as "an individual employed by an employer." 42 U.S.C. § 2000e(f). As discussed more fully below, O'Loughlin was not an employee of the MBTA at the time of the alleged violation, and thus 42 U.S.C. § 2000e(f) does not apply. Indeed, even were this Court to construe O'Loughlin as a prospective independent contractor in connection with his "anticipated work" at the Academy, "it is now clear that [Title VII] does not cover independent contractors." Alberty-Velez v. Corporacion de P.R. para la Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004), citing Dykes v. DePuy, Inc., 140 F.3d 31, 37 n. 6 (1st Cir. 1998). In sum, an independent contractor may not maintain a Title VII action against the entity with which he contracts. Id.

Thus, O'Loughlin has not alleged a valid claim for a violation of a federal right. His Section 1983 claims against McCall and Mulhern must be dismissed. Particularly given the *de minimus* nature of the non-speculative lost compensation damage claim ($140; Complaint, ¶ 16), this would be a particularly inappropriate case for this Court to retain jurisdiction of the pendent claims, once the sole federal claim fails. Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995), cert. denied, 516 U.S. 987 (1995) (affirming dismissal without prejudice of pendent jurisdiction claims when the district court determined "far in advance of trial that no legitimate federal question existed."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point towards declining to exercise jurisdiction over the remaining state-law claims"). See also Johnson v. Board of Bar Overseers of Massachusetts, Exhibit A at p. 20 ("With all federal claims dismissed, the Court exercises its discretion to refrain from exercising supplemental jurisdiction over Johnson's remaining claim for defamation").

Although the defendants believe that the inquiry should end at this point, the state claims are discussed below in case the event that this Court were to take a different view.

## II. Count I Must Fail Because, at the Time of the Alleged Improper Action, O'Loughlin Was Not an Employee under M.G.L. Chapter 151B.

### A. O'Loughlin's Employment Ceased before the Allegedly Retaliatory Conduct.

O'Loughlin's claim for retaliation in violation of M.G.L. Chapter 151B must fail because at the time the challenged conduct occurred O'Loughlin was not an "employee" as required by the statute. The Complaint alleges that O'Loughlin "voluntarily resigned" as an employee of the MBTA in August of 2002, with an effective date on which his employment officially terminated of October 20, 2002. (Complaint, at ¶ 11.) The alleged protected activity upon which his retaliation claims are based first came to the attention of the MBTA on October 29, 2002, nine days after his employment had ended (Id. at ¶ 14), and the various steps to prevent him, as a non-employee, from teaching a course at the MBTA Police Academy began on October 31 and continued through December, 2002, all well after the termination of his employment. (Id. at ¶¶ 15-23.) In sum, his employment ended *before* the alleged protected activity was even known to the Defendants and, therefore, *before* any alleged improper action by the MBTA, McCall or Mulhern. (Id. at ¶ 11.)

The Massachusetts Fair Employment Practices Act, M.G.L. Chapter 151B, applies only to employment relationships. Comey v. Hill, 387 Mass. 11, 15 (1982) ("Although the Commonwealth's employment discrimination law, G.L. c. 151B, affects 'a broad array of employment practices' ... we will not assume that the Legislature intended to cover relationships outside the traditional common law employer-employee relationship.") O'Loughlin cannot rely on actions that occurred after his employment had concluded to support causes of action under M.G.L. Chapter 151B. This is especially so where the "protected activity" which he contends triggered the unlawful retaliatory conduct (or at least Defendants' knowledge of that activity)

8

occurred outside the employment period. Hence, Counts I and II fail to state a claim upon which relief can be granted. [9]

## B. Independent Contractors Are Not Protected by M.G.L. Chapter 151B.

Even if this Court were inclined to permit the inference[10] that O'Loughlin and the MBTA entered into a new agreement *during* his employment for him to teach at the Academy *after* his employment had concluded, that arrangement would have been as an independent contractor, which is outside the scope of M.G.L. Chapter 151B. O'Loughlin's role as an outside "expert" teacher at the Academy for a four-hour course, construed in the light most favorable to him, created an independent contractor relationship. In Comey v. Hill, 387 Mass. 11 (1982), the Supreme Judicial Court held that "in the absence of any indication to the contrary, we will not assume that the Legislature intended to cover relationships outside the traditional common law employer-employee relationship." Comey, 387 Mass. at 15. The Court further held that "[a]lthough the Commonwealth's employment discrimination law, G.L. c. 151B, affects a 'broad array of employment practices' and extensively prohibits discrimination against certain protected classes, we do not read the statute as intending to broaden the definition of employee to include an independent contractor." Id.; Speen v. Crown Clothing Corp., 102 F.3d 625, 628-29 (1st Cir. 1996) (same). O'Loughlin's new role as a one-time (or possibly occasional) instructor of a four hour course is outside of the traditional employer-employee relationship, and thus his allegations are outside the scope of M.G.L. Chapter 151B.

---

[9] The defendants are aware of dicta to the contrary in a recent concurring opinion of Justice Sosman in Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 579 (2004). However, counsel have been able to locate no cases in which a non-employee has sustained a retaliation claim, and Justice Sosman's concurring opinion appears to fly in the face of all common wisdom limiting the availability of M.G.L. Chapter 151B to employees only.

[10] Again, the Court need not accord deference to legal conclusions or inferences not logically drawn from the well-pleaded facts. Glassman v. Computervision, 90 F.3d 617, 628 (1st Cir. 1996) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

### III. Counts V and VI Must Fail Because O'Loughlin's Massachusetts Civil Rights Act ("MCRA") Claims are either Inapplicable or Insufficient as a Matter of Law.

#### A. To the Extent that M.G.L. Chapter 151B Is Deemed Applicable, It is an Exclusive Remedy and Bars O'Loughlin's MCRA Claims.

To the extent O'Loughlin's claims against McCall and Mulhern under M.G.L. Chapter. 151B *do* survive, his MCRA claims must be dismissed. O'Loughlin cannot be permitted to assert an MCRA claim to recover for the same alleged harms actionable under M.G.L. Chapter 151B. "[S]uch duplication of remedies would allow claimants to bypass the procedural prerequisites defined by the legislature in [M.G.L. Chapter 151B], crippling the effectiveness of this specific statutory remedy for discrimination in employment." Bergeson v. Franchi, 783 F. Supp. 713, 721 (D. Mass. 1992); Kuketz v. MDC Fitness Corp., 1998 WL 1119863, at *3 (Mass. Super. Aug. 10, 1998) (dismissing MCRA claim where relief may be obtained under M.G.L. Chapter 151B).

#### B. The Allegations Are Insufficient to Satisfy the Prerequisites of the MCRA.

O'Loughlin's MCRA claims must be dismissed because O'Loughlin has failed to allege that McCall and/or Mulhern engaged in "threats, intimidation or coercion" for the purpose of compelling or deterring conduct. Indeed, O'Loughlin makes no allegations whatsoever concerning any threat, intimidation or coercion by McCall or Mulhern. Despite the conclusory language in the body of Counts V and VI, O'Loughlin nowhere makes *factual* allegations sufficient to meet the standard set forth in the MCRA.

M.G.L. Chapter 12, § 11H is violated "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth ..." A threat is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake,

10

417 Mass. 467, 474 (1994), cert. denied, 513 U.S. 868 (1994). "Intimidation involves putting in fear for the purpose of compelling or deterring conduct." Id.; Willits, 411 Mass. at 210 (nonprofit school's failure to renew a teacher's contract because of her efforts to form an association of teachers does not constitute "threats, intimidation, or coercion" interfering with her exercise of free speech or association rights under M.G.L. Chapter 12, § 11H). Coercion is "the active domination of another's will." Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 409 (1989). At most, the Complaint could be read as including allegations of intimidation by McCall, and far remotely by Mulhern, of their own subordinates or colleagues at the MBTA; no allegations are made of "threats, intimidation or coercion" by either of them against O'Loughlin. The type of conduct of which O'Loughlin complains simply is not covered by a civil rights statute designed to reach an entirely different category of conduct.

### C.  O'Loughlin's Statutory Claims Are Invalid.

In order to prevail on his MCRA claims against McCall and/or Mulhern, O'Loughlin must assert a valid claim that McCall or Mulhern violated a clearly established federal or state constitutional or statutory right and that their actions were objectively unreasonable. As set forth above, O'Loughlin's federal statutory claims against McCall and Mulhern are invalid. (In a nutshell, the federal "right" that O'Loughlin contends was violated was the right to be free of retaliatory conduct resulting from testimony favorable to a plaintiff in a discrimination action against the MBTA. Such a retaliation action does not lie against the individual defendants, and that rule should not be circumvented by filing the claim under the MCRA, when it cannot be filed under Title VII. Further, as to the MBTA, the retaliation claim cannot lie under Title VII where O'Loughlin was not an employee at the time of the challenged conduct.) To the extent that O'Loughlin's claims in Count I, III, and IV fail to survive this motion, O'Loughlin's MCRA claims must also fail. Marsman v. Western Elec. Co., 719 F. Supp. 1128, 1138-39 (D. Mass.

11

1988) (summary judgment on plaintiff's Section 1981 discrimination claim required dismissal of MCRA claim premised on that charge).

### IV. Counts VII through X Must Fail Because McCall and Mulhern Did Not Interfere with O'Loughlin's Contractual or Business Relations with a Third Party.[11]

O'Loughlin alleges that McCall and Mulhern intentionally interfered with his contractual or advantageous relations with the MBTA. Such a claim requires that the plaintiff (1) had a contract or business relationship with a third party; (2) that the defendant knowingly induced the third party to break the contract or business relationship; (3) that the defendant's conduct was intentional, and improper in motive or means; and, (4) that the plaintiff was harmed as a result. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). When the alleged interference is perpetrated by a claimant's supervisor, a qualified privilege attaches, and the supervisor's conduct must be motivated by actual malice. Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 229 (D. Mass. 2002) (under Massachusetts law, defendant-supervisors are entitled to qualified privilege in employment-based tortious interference with contract, and that privilege must be overcome by showing of actual malice); Webber v. Comm. Teamwork, Inc., 434 Mass. 761, 781-82 (2001) (citing Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 (1981) (actual malice standard applies when employee sues supervisor for tortious interference with contract)); Mailhiot v. Liberty Bank & Trust Company, 24 Mass. App. Ct. 525, 527 (1987) (same). In this context, "actual malice" is any "spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). Mere dislike, as alleged by the plaintiff in this case (Complaint, ¶¶ 55, 57, 59, and 61), does not rise to the requisite level of malice. King v. Driscoll, 418 Mass. 576, 587 (1994) ("personal dislike will not warrant an

---

[11] By caption, Count VIII refers to Mr. Mulhern. This caption appears to be a typographical error because the body of Count VIII refers to Defendant Anne McCall.

inference of the requisite ill will" sufficient to constitute "actual malice"). Hence, the pleadings are insufficient to support these claims.

Should this Court accept the contention that O'Loughlin was no longer an employee when McCall and Mulhern allegedly interfered with his contractual or advantageous relationship, O'Loughlin has failed to sufficiently allege the necessary element of "improper motive or means." See, e.g., United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815-16 (1990) (although "malice" is not required, the plaintiff must allege "something more than intentional interference"); Melo-Tone Vending, Inc. v. Sherry, Inc., 39 Mass. App. Ct. 315, 316 (1995) (emphasizing that improper motive or improper means is a necessary element of tortious interference). Allegations of "personal dislike [are not] enough to prove an improper motive." EIC Development, L.L.C., Essex Capital Partners, Inc. v. Mystic Valley Development Com'n, 16 Mass. L. Rptr. 138, 2003 WL 1702531, *15 (Mass. Super. Mar 26, 2003) citing King, 418 Mass. at 587. As described above, O'Loughlin's allegations are insufficient to support his claims.

## CONCLUSION

For the reasons set forth above, Defendants McCall and Mulhern respectfully request that the Court dismiss the Complaint against them.

ANNE MCCALL

MICHAEL MULHERN

By their attorneys,

_____
Joan A. Lukey (BBO #307340)
Jeffrey A. Smagula (BBO #643669)
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Date: June 25, 2004

## CERTIFICATE OF SERVICE

I, Jeffrey A. Smagula, Esq., hereby certify that on this 25th day of June, 2004, I caused a true copy of the above document to be served upon Mitchell J. Notis, counsel for the plaintiff, 370 Washington Street, Brookline, MA 02445 by hand delivery, and upon Mary M. Logalbo, counsel for defendant Massachusetts Bay Transportation Authority, Ten Park Plaza, Boston, MA 02116-3974 by facsimile and first class mail.

_____
Jeffrey A. Smagula