UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10257 MEL

THOMAS J. O'LOUGHLIN,
Plaintiff

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY and ANNE McCALL and
MICHAEL MULHERN,
Defendants

**OPPOSITION OF PLAINTIFF THOMAS J. O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANTS MICHAEL MULHERN AND ANNE McCALL**

I.   INTRODUCTION.

Plaintiff Thomas J. O'Loughlin, through counsel, hereby opposes the Motion to Dismiss filed in this action by Defendants Michael Mulhern ("Mulhern") and Anne McCall ("McCall"). As is set forth in greater detail below, the Motion to Dismiss should be denied as to all Counts of the Complaint asserted against Mulhern and McCall.

In the Complaint in this action, Plaintiff Thomas J. O'Loughlin ("Chief O'Loughlin") has claimed that Defendants violated his rights under MGL Chapter 151B, 42 USC Section 2000e, 42 USC Section 1983, and MGL Chapter 12 Section 11, by retaliating against him and interfering with his protected rights. Chief O'Loughlin has also asserted claims in the Complaint for intentional interference with contractual relationships, intentional interference with advantageous relationships and unfair business practices by the Massachusetts Bay Transportation Authority, in violation of MGL Chapter 93A.

1

In relation to the instant Motion to Dismiss filed by McCall and Mulhern, the counts at issue in the Complaint assert claims against McCall and Mulhern for retaliation in violation of MGL Chapter 151B, for retaliation in violation of 42 U.S. Code Section 2000e (also referred to herein as "Title VII"), for violation of 42 U.S. Code section 1983, for improper interference with contractual and advantageous relationships, and for violation of MGL Chapter 12 section 11.[1]

Chief O'Loughlin (who is now the Chief of the Milford Police Department) is a former Chief of the Massachusetts Bay Transportation Authority ("MBTA") Police Department. Chief O'Loughlin asserted in the Complaint that after he left his position as Chief of the MBTA Police Department, he was improperly refused permission to work at the MBTA Police Academy teaching a course about Sudden Infant Death Syndrome ("SIDS"). Chief O'Loughlin is an expert regarding SIDS, and he has previously taught the SIDS course extensively.

McCall had been one of Chief O'Loughlin's subordinate officers while he was Chief, and was responsible for the administration of the MBTA Police Academy. Mulhern was the General Manager of the MBTA while Chief O'Loughlin was the Chief of the MBTA Police Department. McCall and Mulhern were responsible for improperly preventing Chief O'Loughlin from teaching the SIDS course.

Chief O'Loughlin has alleged in the Complaint that the actions of McCall and Mulhern (for which the MBTA is responsible) were taken against him for malicious and retaliatory reasons, due to the knowledge held by McCall and Mulhern that it was of great importance to Chief

---

[1] Defendant MBTA has filed a similar motion to dismiss the counts of the complaint asserted against it. Plaintiff opposes both motions in separate memoranda.

2

O'Loughlin for personal and professional reasons, to continue teaching the SIDS Training course.

## II.    SUMMARY OF ARGUMENT.

1.    Count I for violation of M.G.L. c.151B due to retaliation must not be dismissed. It is clear, based upon the language of M.G.L. c.151B, the statements of Justice Sosman in the case of Stonehill College v. MCAD, 441 Mass. 549, 579 (2004), as well as relevant federal case law in relation to Title VII, that the prohibitions on retaliation contained in M.G.L. c.151B apply to actions taken against former employees such as Plaintiff even after their employment has ended. It is also clear that those prohibitions also provide for individual liability.

2.    Count II for violation of 42 U.S. Code §2000e due to retaliation must not be dismissed. Directly contrary to the law cited by Defendants, the United States Supreme Court has held in the case of Robinson v. Shell Oil Company, 117 S.Ct. 843 (1997), that the prohibitions of retaliation contained in Title VII, 42 U.S.C. §2000e, apply to former employees such as Plaintiff, even for actions taken against a former employee after his or her employment has ended.

3.    Counts III and IV against McCall and Mulhern for violation of 42 U.S.C. §1983 must not be dismissed. By their actions set forth in the Complaint, Defendants illegally retaliated against Plaintiff in violation of 42 U.S. Code §2000e. Although case law prohibits Defendants from being held individually liable for their actions in violation of Title VII, the MBTA is responsible for their illegal actions. Therefore, through their illegal actions under color of state law they have caused Plaintiff to be deprived of his rights under federal law. The fact that the Plaintiff may not be able to file suit against Defendants individually for this violation, does not in any way detract from the fact that Defendants' actions caused Plaintiff's federal rights to be violated. Additionally, by causing Plaintiff to be retaliated against for opposing practices made illegal by Title VII and for providing favorable testimony in relation to a Title VII action, Defendants have interfered with Plaintiff's First Amendment right to freedom of speech, thus providing an

additional way in which they have interfered with Plaintiff's federal or constitutional rights in violation of §1983.

4. Counts V and VI against McCall and Mulhern for violation of M.G.L. c.12 §11, must not be dismissed. Defendants have proceeded to terminate Plaintiff's contractual rights with the MBTA as punishment against him for providing truthful testimony in a discrimination matter, as punishment for exercising his First Amendment rights. Defendants took these actions both to punish Plaintiff for his truthful testimony and to intimidate him from proceeding to testify further. Their actions constitute the "threats, intimidation or coercion" which is prohibited by M.G.L. c.12 §11.

5. Counts VII, VIII, IX and X against McCall and Mulhern for intentional interference with contractual relationships and intentional interference with advantageous relationships must not be dismissed. Plaintiff has adequately alleged that Defendants interfered with these contracts due to actual malice against him, not merely "dislike." The "dislike" Defendants expressed towards Plaintiff amounted to illegal retaliation against Plaintiff for speaking truthfully in a discrimination matter, for exercising his First Amendment rights. That is enough of a n improper motive to amount to actual malice.

Additionally, various issues are presented and argued in the Motion to Dismiss which assume the resolution of certain factual disputes in this case in favor of Defendants. Specifically, based upon the allegations set forth in the Complaint it cannot be determined with certainty whether Plaintiff was an employee or an independent contractor in relation to his teaching duties (the matter having been pleaded in the alternative), it cannot be determined whether Defendants caused the MBTA to breach its contractual arrangement with Plaintiff due to malice or (as the Defendants claim) for less venal reasons, it cannot be determined whether Plaintiff and the MBTA were merely involved in negotiations for him to teach (as the Defendants claim) rather than there being an agreement for him to do so, and it cannot be determined whether the MBTA had legitimate reasons not to go forward with its contract with Plaintiff to have him teach (as the Defendants claim).

4

Defendants assume all of these facts in their favor in their Motion to Dismiss, and argue as if these genuine issues of material fact have been determined in their favor. These substantive factual issues, these substantive factual disputes, cannot be determined until after discovery has been engaged in this action. They can only be resolved at trial or on a Motion for Summary Judgment.

Finally, the question of whether Defendants are protected from Plaintiff's §1983 claims by their affirmative defense of qualified immunity turns on Defendants' subjective knowledge of whether certain activities they engaged in were illegal or not. That is another matter which cannot be resolved on a Motion to Dismiss, and which must await the completion of discovery for resolution.

### III. ARGUMENT.

**1. Plaintiff has asserted valid federal claims under 42 U.S. Code §2000e for illegal retaliation.**

The keystone of Defendants' argument in their Motion to Dismiss is that Plaintiff has not asserted any valid federal claims in this action. Based upon that assertion, Defendants claim that Plaintiff's claims under 42 U.S. Code §1983 must be dismissed for the failure to allege the violation of any federal right. Defendants also argue that to whatever extent Plaintiff's state claims survive the Motion to Dismiss, this Court should dismiss those claims as well, as (Defendants argue) there are no valid federal claims before the Court and the Court should decline to exercise its pendant jurisdiction. This argument is patently incorrect, and is based on a misstatement of the law regarding whether or not former employees are entitled to the protections of 42 U.S. Code §2000e against illegal retaliation.

This issue (which arises in relation to Count II of the Complaint) is discussed before the discussion of other counts in the Complaint, as resolution of this issue is such an important

aspect of the determination of Defendants' Motion to Dismiss, and as certain case law decided under Title VII bears upon the resolution of the state retaliation claims as well.

In Count II of the Complaint, Plaintiff asserts that the MBTA has engaged in illegal retaliation against him in violation of 42 U.S.C. §2000e. At pages 6 and 7 of their Memorandum, Defendants claim that the protections against retaliation of 42 U.S. Code §2000e do not apply to Plaintiff, as he was not an employee of the MBTA at the time of the alleged violation. That is simply an incorrect statement of relevant law.

In Robinson v. Shell Oil Company, 117 S.Ct. 843 (1997), a former employee complained that he had been given a negative reference after he had been fired, in retaliation for having filed a charge of discrimination against his former employer. In ruling on the case, the United States Supreme Court specifically held that the term "employees" contained in 42 U.S. Code §2000e, includes "former employees" alleging illegal retaliation after their employment has been terminated. Robinson, supra at 849. In reaching this conclusion, Justice Thomas stated the following, at 848-849:

> "In further support of this view, Petitioner argues that the word "employees" includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by §704(a). ...This is also the position taken by the EEOC...according to the EEOC, exclusion of former employees from the protection of §704(a) would undermine the effectiveness of Title VII by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims...those arguments carry persuasive force given their coherence and their consistency with a primary purpose of anti-retaliation provisions: maintaining unfettered access to statutory remedial mechanisms...the EEOC quite persuasively maintains that it would be destructive of this purpose of the anti-retaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII – for example, complaints regarding discriminatory termination...we hold that the term "employees" as used in §704(a) of Title VII, is ambiguous as to whether it includes former employees. It being more consistent with the broader context of Title VII and the primary purpose of §704(a), we hold that former employees are included within §704(a) coverage. ..."

6

There can be no doubt that Title VII's protections against retaliation apply to Plaintiff. Accordingly, the Motion to Dismiss must be denied as to Count II of the Complaint.

### 2.    Plaintiff has stated a valid claim for violation of M.G.L. c.151B.

In Count I of the Complaint, Plaintiff has asserted that the MBTA, McCall and Mulhern retaliated against him in violation of M.G.L. c.151B. At page 8 of their Brief, Defendants assert that Count I must be dismissed because, once again, Plaintiff was not an employee at the time of the retaliation engaged in against him. Defendants are wrong.

Although there is no opinion interpreting Chapter 151B with the clarity with which the Robinson opinion grants protection to former employees under Title VII, an examination of relevant statutes and case law results in no less concrete a conclusion that former employees are protected under Chapter 151B from retaliation as well.

This conclusion is based upon the language of Chapter 151B, the statements made by Justice Sosman in the Stonehill College case, and by analogy, the holding of the Robinson case.

The protections against retaliation contained in Chapter 151B are two-fold. They are contained in M.G.L. c.151B §4(4) and M.G.L. c.151B §4(4a).

M.G.L. c.151 §4(4) states that it shall be illegal:

> "for any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this Chapter or because he has filed a Complaint, testified or assisted in any proceeding under Section 5."

M.G.L. c.151B §4(4a) states that it shall be illegal:

> "for any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this Chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided

7

or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this Chapter."

Neither §4(4) nor §4(4a) mention anything about limiting their protections to <u>employees.</u> Rather, both sections provide protection from retaliation to "<u>any person.</u>" It is not employees who are protected from retaliation, but "persons." By specifically declining to limit the scope of these provisions to "employees," the Legislature intended that the blanket of protection provided by these sections would cover a wider variety of individuals than just "current employees." The provisions protect former employees, and individuals having no employment relationship with an employer <u>at all</u>. The determining factor as to whether an individual is protected from retaliation by an employer, is whether that <u>employer</u> has engaged in illegal acts.

This expansive reading of the protections against retaliation provided by Chapter 151B was approved of by Justice Sosman in her concurring opinion in the case of <u>Stonehill College v. MCAD</u> 441 Mass. 549 (2004). Although the <u>Stonehill College</u> case did not specifically deal with whether former employees were protected from retaliation under Chapter 151B, Justice Sosman chose to discuss this issue in her concurring opinion. Justice Sosman discussed the matter at page 579 of the <u>Stonehill College</u> decision as follows:

> "Claims for retaliation under G.L. c.151B...are also not predicated on any employment contract between the parties. Indeed, they can be brought by persons who were never employed by the defendant employer, based solely on retaliation for having assisted some other complainant, and they may be brought against defendants who are not employers or even agents of employers. <u>See,</u> G.L. c.151B §4(4a) (unlawful for "any person" to retaliate against any "other person" for having aided or encouraged any other person in the exercise or enjoyment of any right protected by G.L. c.151B). <u>See also,</u> G.L. c.151B §4(4) (prohibiting retaliation by "any person, employer, labor organization or employment agency" against "any person because he has opposed by practice forbidden under G.L. c.151B or because he has filed a complaint, testified or assisted in any proceeding under G.L. c.151B §5." Retaliation claims can also be predicated on acts occurring after an employment contract has ended. Actions based on conduct after a contract has been terminated do not constitute, nor are they even analogs to, claims for breach of contract."

Finally, the <u>Robinson</u> decision discussed in the preceding section of this Brief provides an additional basis for holding that former employees are protected from retaliation under

8

c.151B. Although the Robinson decision deals specifically with Title VII and not with c.151B, Justice Thomas' rationale in deciding the Robinson case applies with equal force to an analysis of the protections of c.151B.

Based upon the language of c.151B, Justice Sosman's comments in Stonehill College, and the Robinson decision, there should be no doubt that Plaintiff was protected from retaliation by Defendants whether or not he was a "former employee."[2]

### 3.   Plaintiff has properly stated claims for violation of 42 U.S.C. §1983.

In Counts III and IV of the Complaint, Plaintiff has asserted that McCall and Mulhern have violated his right under 42 U.S.C. §1983 not to have his rights under federal laws be interfered with under color of state law.

Defendants have asserted that Plaintiff's claims for violation of §1983 must be dismissed, as Plaintiff has allegedly not been able to articulate any federal statutory or constitutional rights which have been violated. This is incorrect.

As is set forth in the preceding section of this Brief, Plaintiff has set forth a valid claim for retaliation against him in violation of Title VII, 42 U.S.C. §2000e. That is the federal statute which Defendants have violated which provides one basis for Plaintiff to assert a §1983 violation against Defendants.

Plaintiff does not question that he would not be able to file suit against McCall and Mulhern individually for having retaliated against him in violation of Title VII. However, his Complaint makes clear that it is their actions in retaliating against him which causes the MBTA to be liable to him for illegal retaliation in violation of Title VII.

---

[2] Count I of the Complaint asserts claims against both the MBTA, McCall and Mulhern. Although Defendants do not question the fact that they can be held individually liable under c.151B (as opposed to their not being individually liable under Title VII) it is worth noting that it has been firmly established that individuals may be liable for discrimination or retaliation under c.151B. See, e.g. Beaupre v. Cliff, Smith and Associates, 738 N.E.2d 753 (Mass.App.Ct. 2000).

9

It is the actions of McCall and Mulhern against Plaintiff which amounted to illegal retaliation, and for which the MBTA (as their employer) is responsible.

The fact that Plaintiff cannot file suit against McCall and Mulhern for their illegal actions does not in any way detract from the illegal nature of the retaliation they caused him to be subject to, nor the harm that retaliation caused him. By their actions, McCall and Mulhern caused Plaintiff's rights to be free from illegal retaliation under Title VII to be violated. They have deprived him of a federal statutory right, whether or not he may maintain a separate cause of action against them under the remedial scheme enacted by Title VII. Accordingly, Plaintiff has adequately set forth a federal right which Defendants have violated, thus providing a basis for a claim against them pursuant to §1983.

Additionally, it must be kept in mind that the illegal actions Plaintiff has complained of consist of being retaliated against for providing truthful testimony in a civil rights action. Essentially, Plaintiff is asserting that he has been retaliated against, and punished, for speaking truthfully. In constitutional terms, Plaintiff has been retaliated against for asserting his First Amendment right to freedom of speech.

To the extent Plaintiff has alleged that he has been retaliated against for speaking truthfully, the retaliation was engaged in against him in violation of his First Amendment right to freedom of speech. Accordingly, in addition to having violated Plaintiff's rights under Title VII, Defendants violated Plaintiff's rights under the First Amendment to the Constitution. This is an additional basis for Plaintiff to assert §1983 claims against Defendants.[3]

---

[3] Should the Court find that the First Amendment rights which Plaintiff alleges were violated need to be spelled out with more specificity in the Complaint, Plaintiff respectfully requests that he be allowed to amend his complaint in this action to provide greater clarification of the violation of his First Amendment rights.

10

Plaintiff has adequately asserted that Defendants have violated his federal statutory rights and federal constitutional rights, in order to maintain a cause of action under 42 U.S. Code §1983.

The next question which must be answered regarding Plaintiff's §1983 claims, is whether Defendants claims of qualified immunity require the dismissal of Plaintiff's claims at this point and time. They do not.[4]

The question of whether McCall and Mulhern are entitled to any qualified immunity is, as Defendants recite in their Brief at pages 5-6, a factual question of a subjective nature. As Defendants state in their Brief, in order to determine the immunity question (which is a question regarding an affirmative defense), it must be determined whether McCall and Mulhern were aware of a clearly established statute or constitutional provision which would have prohibited their conduct. In the instant case, McCall and Mulhern must attempt to prove that their actions did not violate Plaintiff's right to be free of retaliation and to exercise his right of free speech, and that they would not have known that their conduct violated these rights. This is a subjective inquiry which can only be answered after discovery has been engaged in this case. It is not appropriate for resolution on a Motion to Dismiss. The reasonableness of Defendants' conduct simply cannot be determined at this point in this litigation. This issue cannot be determined until after discovery has been completed, whether or not Defendants are entitled to qualified immunity.

The claims for violation of §1983 must not be dismissed.

---

[4] It must be noted that Defendants have misstated the allegations in the Complaint on this issue. At page 5 of their Brief, Defendants incorrectly assert that Plaintiff has sued them in their official capacities. That is simply not correct. Paragraph 8 of the Complaint states, "Ms. McCall is sued in her individual capacity." Paragraph 9 of the Complaint states, "Mr. Mulhern is sued in his individual capacity."

### 4. Plaintiff has stated valid claims under M.G.L. c.12 §11h.

In Counts V and VI of the Complaint, Plaintiff has asserted that by their actions in retaliating against him, McCall and Mulhern violated his right under M.G.L. c.12 §11h to be free from the deprivation of his rights under state and federal laws through threats, intimidation and coercion. Defendants assert that these claims must fail, as Defendants' actions do not amount to the type of "threats, intimidation or coercion" which are significant enough to be protected by Chapter 12 §11, and that Plaintiff has not established the violation of a clear federal or state constitutional statutory right.

As has been discussed in earlier sections of this Brief, Defendants' actions in retaliating against Plaintiff clearly violate Plaintiff's rights under Title VII and Chapter 151B, as well as his constitutional First Amendment right to freedom of speech. Plaintiff has adequately set forth statutory or constitutional rights which Defendants' actions have violated.

As to whether or not the violations are sufficient to amount to the "threats, intimidation or coercion" covered by Chapter 12 §11, the nature of Defendants' actions must be kept in mind.

Once Defendants became aware that Plaintiff would be testifying against them in a civil rights action, they attempted to terminate his right to teach a class in preventing Sudden Infant Death Syndrome, an issue extremely important to Plaintiff. When Plaintiff was able to initially have that decision overturned so that he could again be able to teach, Defendants once again made sure that Plaintiff's ability to teach would not be honored. Defendants were attempting to punish Plaintiff for being willing to provide testimony, and to intimidate and prevent Plaintiff from providing such testimony in the future. They were attempting through their actions to make Plaintiff fearful, to deter him from engaging in freedom of speech, to deter him from assisting another employee in the protection of his civil rights. This is exactly the type of threats, intimidation and coercion which Chapter 12 §11h was designed to prevent.

Plaintiff's claims under M.G.L. c.12 §11h must not be dismissed.

### 5. Plaintiff has asserted valid claims for intentional interference with contractual relationships and intentional interference with advantageous relationships.

In Counts VII, VIII, IX and X, Plaintiff has asserted that McCall and Mulhern have intentionally interfered with his contractual relationships and have intentionally interfered with his advantageous relationships. In their Brief, Defendants assert that Plaintiff has not adequately alleged these claims, as actual malice must be shown when the allegedly improper conduct is engaged in by a supervisor. Defendants claim that the "dislike" alleged by Plaintiff is not adequate to rise to that level. Defendants are incorrect.

Initially, it must be noted that in this section of their Brief (page 12 of the Memorandum), Defendants are attempting to change their version of the facts of the case. Early in their Memorandum, they consistently state that Plaintiff was not an employee at the time of the actions alleged, and that at most he was an independent contractor. However, in Section 4 of their Brief regarding Counts VII through X, they refer to a standard which applies to a "claimant's supervisor" and state that conduct by the "supervisor" must be motivated by actual malice. Suddenly, at this point in their Brief, Defendants are claiming that Plaintiff was an employee, so that they can apply a stricter standard to his claims. Even this stricter standard is met by the allegations of the Complaint.

Defendants claim the "actual malice" which is required consists of any "spiteful, malignant purpose unrelated to the legitimate corporate interest." Defendants' Brief at page 12. Defendants state that "mere dislike" does not amount to the requisite degree of malice.

Although Plaintiff has indeed used the word "dislike" in his Counts for interference with contractual and advantageous relationships, Defendants have purposely misrepresented the context in which that phrase is used. Specifically, Plaintiff has stated in the

Complaint that he was "disliked" for having engaged in protected activities. See, ¶¶ 55, 57, 59 and 61 of the Complaint.

In paragraph 1 of the Complaint, Plaintiff has alleged that Defendants took the actions they engaged in against him for "malicious and retaliatory reasons."

Plaintiff has alleged in ¶15 of the Complaint that Defendant McCall screamed at the MBTA Academy staff and stated in vulgar language that Plaintiff was "not setting foot in my academy and that is final." In ¶17 of the Complaint, Plaintiff has stated that Acting Chief Flemming told him that he (Flemming) believed that Defendant McCall was acting in a retaliatory manner. In ¶21 of the Complaint it is alleged that Defendant McCall stated that, "O'Loughlin is not teaching, that is final from the GM, he is not going to set a fucking foot into my academy." In ¶¶ 23 and 24 of the Complaint it is alleged that Defendant McCall has stated that she would cancel the mandatory SIDS Training at the MBTA Police Academy, rather than have it taught by Chief O'Loughlin.

As is alleged throughout the entire Complaint in this action, the gist of what Plaintiff has alleged in this action is that Defendants knew that because of the death of Plaintiff's child from SIDS, Plaintiff was extremely devoted to the teaching of SIDS Training at the MBTA Police Academy. Because Defendants knew how important this particular training was to Plaintiff, they chose to retaliate against him by denying him the opportunity to engage in this training. Defendants' conduct in retaliating against Plaintiff in this manner is cruel, it is vile and it is abusive. It is not, as Defendants assert in their Brief, "mere dislike."

Interfering with contractual rights in order to retaliate against a person for providing testimony in a civil rights matter, in violation of Title VII and MGL Chapter 151B, and in derogation of First Amendment rights, is not "mere dislike."

To the extent that Plaintiff is required to allege in his Complaint that his contractual or advantageous relationships were improperly interfered with due to actual malice, he has done so.

Defendants' argument that Plaintiff has not sufficiently alleged "improper motive or means" fails as well. The motive alleged by Plaintiff, once again, is that Defendants sought to punish him in as emotionally painful a way that they could imagine, for his having been willing to provide truthful testimony for a co-worker in a civil rights action. It is ludicrous for Defendants to assert that they did not have an improper motive, a motive which would allow Plaintiff's improper interference claims to go forward.

## IV.  CONCLUSION.

For all the foregoing reasons it is respectfully requested that the Motion to Dismiss be denied in its entirety.

                                          THOMAS J. O'LOUGHLIN
                                          By his Attorney,

                                          Mitchell J. Notis, BBO# 374360
                                          LAW OFFICE OF MITCHELL J. NOTIS
                                          370 Washington Street
                                          Brookline, MA 02445
                                          Tel.: (617) 566-2700

DATED: July 12, 2004

## CERTIFICATE OF SERVICE

15

I, Mitchell J. Notis, hereby certify that on July 13, 2004 I caused to be served upon counsel for all parties of record, a copy of the within OPPOSITION OF PLAINTIFF THOMAS J. O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANTS MICHAEL MULHERN AND ANNE McCALL by first class mail, postage prepaid.

_____
Mitchell J. Notis