

## UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10257 MEL

**THOMAS J. O'LOUGHLIN,**
Plaintiff

v.

**MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY** and **ANNE McCALL** and
**MICHAEL MULHERN,**
Defendants

---

## OPPOSITION OF PLAINTIFF THOMAS J. O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

### I.   INTRODUCTION.

Plaintiff Thomas J. O'Loughlin, through counsel, hereby opposes the Motion to Dismiss filed in this action by Defendant Massachusetts Bay Transportation Authority ("MBTA") in this action. As is set forth in greater detail below, the Motion to Dismiss should be denied as to all Counts of the Complaint asserted against the MBTA.

Plaintiff has named as defendants in this action both the MBTA, as well as two individuals, Michael Mulhern ("Mulhern") and Anne McCall ("McCall").

In the Complaint in this action, Plaintiff Thomas J. O'Loughlin ("Chief O'Loughlin") has claimed that Defendants violated his rights under MGL Chapter 151B, 42 USC Section 2000e, 42 USC Section 1983, and MGL Chapter 12 Section 11, by retaliating against him and interfering with his protected rights. Chief O'Loughlin has also asserted claims in the Complaint for intentional interference with contractual relationships, intentional interference with advantageous relationships and unfair business practices in violation of MGL Chapter 93A.

1

In relation to the instant Motion to Dismiss filed by the MBTA, the counts at issue in the Complaint assert claims against the MBTA for retaliation in violation of MGL Chapter 151B, for retaliation in violation of 42 U.S. Code Section 2000e (also referred to herein as "Title VII"), and for unfair and deceptive business practices in improperly terminating his contractual relationship for illegal motives, in violation of MGL Chapter 93A.[1]

Chief O'Loughlin (who is now the Chief of the Milford Police Department) is a former Chief of the Massachusetts Bay Transportation Authority ("MBTA") Police Department. Chief O'Loughlin asserted in the Complaint that after he left his position as Chief of the MBTA Police Department, he was improperly refused permission to work at the MBTA Police Academy teaching a course about Sudden Infant Death Syndrome ("SIDS"). Chief O'Loughlin is an expert regarding SIDS, and he has previously taught the SIDS course extensively.

McCall had been one of Chief O'Loughlin's subordinate officers while he was Chief, and was responsible for the administration of the MBTA Police Academy. Mulhern was the General Manager of the MBTA while Chief O'Loughlin was the Chief of the MBTA Police Department. McCall and Mulhern were responsible for improperly preventing Chief O'Loughlin from teaching the SIDS course.

Chief O'Loughlin has alleged in the Complaint that the actions of McCall and Mulhern (for which the MBTA is responsible) were taken against him for malicious and retaliatory reasons, due to the knowledge held by McCall and Mulhern that it was of great importance to Chief

---

[1] Defendants Mulhern and McCall have filed a similar motion to dismiss the counts of the complaint asserted against them individually. Plaintiff opposes both motions in separate memoranda.

2

O'Loughlin for personal and professional reasons, to continue teaching the SIDS Training course.

The counts at issue in this motion to dismiss are the counts asserted against the MBTA for retaliation in violation of MGL Chapter 151B (Count I), for retaliation in violation of 42 U.S. Code Section 2000e (Count II), and for unfair business practices in violation of MGL Chapter 93A (Count XI).[2]

## II.   SUMMARY OF ARGUMENT.

1.     Count I for violation of M.G.L. c.151B due to retaliation must not be dismissed. It is clear, based upon the language of M.G.L. c.151B, the statements of Justice Sosman in the case of Stonehill College v. MCAD, 441 Mass. 549, 579 (2004), as well as relevant federal case law in relation to Title VII, that the prohibitions on retaliation contained in M.G.L. c.151B apply to actions taken against former employees such as Plaintiff even after their employment has ended. It is also clear that those prohibitions also provide for individual liability.

2.     Count II for violation of 42 U.S. Code §2000e due to retaliation must not be dismissed. Directly contrary to the law cited by Defendants, the United States Supreme Court has held in the case of Robinson v. Shell Oil Company, 117 S.Ct. 843 (1997), that the prohibitions of

---

[2] In relation to Count XI for violation of MGL Chapter 93A, Plaintiff has pled in the alternative that if he was an independent contractor rather than an employee when the MBTA agreed to retain him to teach the SIDS course, he would be protected by the coverage of MGL Chapter 93A as well as MGL Chapter 151B and Title VII. Plaintiff does not claim to be protected by MGL Chapter 93A if it is determined that after he was no longer employed by the MBTA as Chief of Police, he still was an employee (as a teacher of the SIDS course). However, it must be noted that even if Plaintiff is determined to be an independent contractor and not an employee in relation to teaching the SIDS course, he would still be protected by the anti-retaliation provisions of MGL Chapter 151B and Title VII. That result is reached because, as is discussed in detail in relevant sections of this memoranda, the protections of MGL Chapter 151B and Title VII against retaliation are not limited to employees. Finally in this regard, Plaintiff notes that the question of whether he was an employee or an independent contractor in relation to his teaching of the SIDS course is a matter which can only be determined after discovery has been completed, on either a motion for summary judgment or at trial.

retaliation contained in Title VII, 42 U.S.C. §2000e, apply to former employees such as Plaintiff, even for actions taken against a former employee after his or her employment has ended.

3.    Count XI for breach of M.G.L. c.93A must not be dismissed. To the extent that Plaintiff is found to be an independent contractor rather than an employee in relation to his teaching duties after he left his position of Chief of Police with the MBTA, he had a valid contractual arrangement with the MBTA amounting to more than a mere expectancy. By terminating that contract for illegal retaliatory reasons, the MBTA engaged in an unfair business practice.

Additionally, various issues are presented and argued in the Motion to Dismiss which assume the resolution of certain factual disputes in this case in favor of Defendant. Specifically, based upon the allegations set forth in the Complaint it cannot be determined with certainty whether Plaintiff was an employee or an independent contractor in relation to his teaching duties (the matter having been pleaded in the alternative), it cannot be determined whether Defendants McCall and Mulhern caused the MBTA to breach its contractual arrangement with Plaintiff due to malice or (as the Defendant MBTA claims) for less venal reasons, it cannot be determined whether Plaintiff and the MBTA were merely involved in negotiations for him to teach (as the Defendant MBTA claims) rather than there being an agreement for him to do so, and it cannot be determined whether the MBTA had legitimate reasons not to go forward with its contract with Plaintiff to have him teach (as the Defendant MBTA claims).

Defendant assumes all of these facts in its favor in their Motion to Dismiss, and argues as if these genuine issues of material fact have been determined in its favor. These substantive factual issues, these substantive factual disputes, cannot be determined until after discovery has been engaged in this action. They can only be resolved at trial or on a Motion for Summary Judgment.

4

## III.    ARGUMENT.

**1.  In Count II of the Complaint, Plaintiff has asserted valid federal claims under 42 U.S. Code §2000e for illegal retaliation.[3]**

The keystone of Defendant's argument in the Motion to Dismiss is that Plaintiff has not asserted any valid federal claims in this action.  Based upon that assertion, Defendant claims that to whatever extent Plaintiff's state claims survive the Motion to Dismiss, this Court should dismiss those claims as well, as (Defendant argues) there are no valid federal claims before the Court and the Court should decline to exercise its pendant jurisdiction.  This argument is patently incorrect, and is based on a misstatement of the law regarding whether or not former employees are entitled to the protections of 42 U.S. Code §2000e against illegal retaliation.

In Count II of the Complaint, Plaintiff asserts that the MBTA has engaged in illegal retaliation against him in violation of 42 U.S.C. §2000e.  In its Memorandum, Defendant claims that the protections against retaliation of 42 U.S. Code §2000e do not apply to Plaintiff, as he was not an employee of the MBTA at the time of the alleged violation.  That is simply an incorrect statement of relevant law.

In Robinson v. Shell Oil Company, 117 S.Ct. 843 (1997), a former employee complained that he had been given a negative reference after he had been fired, in retaliation for having filed a charge of discrimination against his former employer.  In ruling on the case, the United States Supreme Court specifically held that the term "employees" contained in 42 U.S. Code §2000e, includes "former employees" alleging illegal retaliation after their employment has been terminated.  Robinson, supra at 849.  In reaching this conclusion, Justice Thomas stated the following, at 848-849:

> "In further support of this view, Petitioner argues that the word "employees"
> includes former employees because to hold otherwise would effectively vitiate

---

[3] The counts asserted against the MBTA in the Complaint are dealt with in this memorandum in slightly different order than they are set forth in the Complaint, due to the importance of certain case law decided under Title VII to the earlier Chapter 151B count.

much of the protection afforded by §704(a). ...This is also the position taken by the EEOC...according to the EEOC, exclusion of former employees from the protection of §704(a) would undermine the effectiveness of Title VII by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims...those arguments carry persuasive force given their coherence and their consistency with a primary purpose of anti-retaliation provisions: maintaining unfettered access to statutory remedial mechanisms...the EEOC quite persuasively maintains that it would be destructive of this purpose of the anti-retaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII – for example, complaints regarding discriminatory termination...we hold that the term "employees" as used in §704(a) of Title VII, is ambiguous as to whether it includes former employees. It being more consistent with the broader context of Title VII and the primary purpose of §704(a), we hold that former employees are included within §704(a) coverage. ..."

There can be no doubt that Title VII's protections against retaliation apply to Plaintiff as a former employee. According to the Robinson decision, those protections would apply to Plaintiff even if he was considered to be only an independent contractor (and not an employee) in relation to his duties teaching the SIDS course. He is protected from retaliation as a former employee (the former Chief of Police), no matter what his status as a teacher is determined to be. Accordingly, the Motion to Dismiss must be denied as to Count II of the Complaint.


2.    **In Count I of the Complaint, Plaintiff has stated a valid claim for violation of M.G.L. c.151B.**

In Count I of the Complaint, Plaintiff has asserted that the MBTA, McCall and Mulhern retaliated against him in violation of M.G.L. c.151B. In its Brief, Defendant asserts that Count I must be dismissed because, once again, Plaintiff was not an employee at the time of the retaliation engaged in against him. Defendant is wrong.

Although there is no opinion interpreting Chapter 151B with the clarity with which the Robinson opinion grants protection to former employees under Title VII, an examination of relevant statutes and case law results in no less concrete a conclusion that former employees are protected under Chapter 151B from retaliation as well.

6

This conclusion is based upon the language of Chapter 151B, the statements made by Justice Sosman in the Stonehill College case, and by analogy, the holding of the Robinson case.

The protections against retaliation contained in Chapter 151B are two-fold.  They are contained in M.G.L. c.151B §4(4) and M.G.L. c.151B §4(4a).

M.G.L. c.151 §4(4) states that it shall be illegal:

> "for any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this Chapter or because he has filed a Complaint, testified or assisted in any proceeding under Section 5."

M.G.L. c.151B §4(4a) states that it shall be illegal:

> "for any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this Chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this Chapter."

Neither §4(4) nor §4(4a) mention anything about limiting their protections to employees. Rather, both sections provide protection from retaliation to "any person." It is not employees who are protected from retaliation, but "persons."  By specifically declining to limit the scope of these provisions to "employees," the Legislature intended that the blanket of protection provided by these sections would cover a wider variety of individuals than just "current employees."  The provisions protect former employees, and individuals having no employment relationship with an employer at all.  The determining factor as to whether an individual is protected from retaliation by an employer, is whether that employer has engaged in illegal acts.

This expansive reading of the protections against retaliation provided by Chapter 151B was approved of by Justice Sosman in her concurring opinion in the case of Stonehill College v. MCAD 441 Mass. 549 (2004).  Although the Stonehill College case did not specifically deal with whether former employees were protected from retaliation under Chapter 151B, Justice

Sosman chose to discuss this issue in her concurring opinion. Justice Sosman discussed the matter at page 579 of the Stonehill College decision as follows:

> "Claims for retaliation under G.L. c.151B…are also not predicated on any employment contract between the parties. Indeed, they can be brought by persons who were never employed by the defendant employer, based solely on retaliation for having assisted some other complainant, and they may be brought against defendants who are not employers or even agents of employers. See, G.L. c.151B §4(4a) (unlawful for "any person" to retaliate against any "other person" for having aided or encouraged any other person in the exercise or enjoyment of any right protected by G.L. c.151B). See also, G.L. c.151B §4(4) (prohibiting retaliation by "any person, employer, labor organization or employment agency" against "any person because he has opposed by practice forbidden under G.L. c.151B or because he has filed a complaint, testified or assisted in any proceeding under G.L. c.151B §5." Retaliation claims can also be predicated on acts occurring after an employment contract has ended. Actions based on conduct after a contract has been terminated do not constitute, nor are they even analogs to, claims for breach of contract."

Finally, the Robinson decision discussed in the preceding section of this Brief provides an additional basis for holding that former employees are protected from retaliation under c.151B. Although the Robinson decision deals specifically with Title VII and not with c.151B, Justice Thomas' rationale in deciding the Robinson case applies with equal force to an analysis of the protections of c.151B.

Based upon the language of c.151B, Justice Sosman's comments in Stonehill College, and the Robinson decision, there should be no doubt that Plaintiff was protected from retaliation by Defendant MBTA as a "former employee."[4]

As was discussed above in the earlier section of this Brief dealing with Plaintiff's protections under Title VII, the protections of MGL Chapter 151B would apply to Plaintiff even if he was considered to be only an independent contractor (and not an employee) in relation to his duties

---

[4] Count I of the Complaint asserts claims against both the MBTA, McCall and Mulhern. Although Defendants McCall and Mulhern have not questioned the fact that they can be held individually liable under c.151B (as opposed to their not being individually liable under Title VII) it is worth noting that it has been firmly established that individuals may be liable for discrimination or retaliation under c.151B. See, e.g. Beaupre v. Cliff, Smith and Associates, 738 N.E.2d 753 (Mass.App.Ct. 2000).

teaching the SIDS course. He is protected from retaliation as a former employee (the former Chief of Police), no matter what his status as a teacher is determined to be. Accordingly, the Motion to Dismiss must be denied as to Count I of the Complaint.

**3.    In Count XI of the Complaint, Plaintiff has properly asserted claims for violation of M.G.L. c.93A.**

Defendant MBTA has claimed that Plaintiff's Chapter 93A claims must be dismissed supposedly because Plaintiff did not have a definite contractual arrangement to teach the SIDS course, because Plaintiff merely had an expectation of teaching, and because Defendant MBTA allegedly merely broke off negotiations with Plaintiff but did not break a contract with him. All of these claims are incorrect.

In Paragraph 1 of the Complaint, Plaintiff states that he was "improperly **refused permission** to work at the MBTA Police Academy teaching a course about Sudden Infant Death Syndrome." In ¶11 of the Complaint, Plaintiff states that he was "**scheduled** by the Commander of the MBTA Police Academy to serve as an instructor and teach the SIDS Training at the MBTA Police Academy on January 2, 2003." In ¶15 of the Complaint, it is stated that, "Deputy McCall **cancelled** Chief O'Loughlin's service as an instructor at the MBTA Police Academy teaching the SIDS Training. Chief O'Loughlin was told by the staff of the MBTA Police Academy that he would not be teaching the SIDS Training course on January 2, 2003." In ¶16 of the Complaint, it is stated that, "as a result of the **cancellation** of Chief O'Loughlin's services as an instructor at the MBTA Police Academy, he was prevented from earning a salary of $35.00 per hour for 4 hours for a total of $140.00 on the January 2, 2003 date as well as all dates after that in which he would have taught the SIDS course at the MBTA Police Academy. The salary would have been paid by the MBTA. Chief O'Loughlin reasonably believed and expected that he would teach the SIDS Training course at the MBTA Police Academy in January, 2003 and thereafter." In ¶17 of the Complaint, it is stated that, "in response to what he felt was the improper **termination** of his services as an instructor, on October 31, 2002, Chief O'Loughlin contacted William Flemming..." In ¶18 of the Complaint, it is stated that,

"Acting Chief of Police Flemming reversed the decision of Deputy Chief McCall and **reinstated** Chief O'Loughlin to his position teaching the SIDS Training at the MBTA Police Academy in January, 2003." In ¶20 of the Complaint, it is stated that, " Deputy McCall individually contacted MBTA General Manager Michael Mulhern to ask him to **overturn the decision** of Acting Chief Flemming to allow Chief O'Loughlin to teach the SIDS Training." In ¶21 of the Complaint, it is stated that, "General Manager Mulhern contacted Acting Chief of Police William Flemming and directed him to advise Chief O'Loughlin that he (Chief O'Loughlin) **would not be allowed** to teach at the MBTA Police Academy." In ¶22 of the Complaint, it is stated that, "Acting Chief of Police William Flemming informed Chief O'Loughlin that his work as an instructor of the SIDS Training had been **cancelled**..."

Based upon these allegations in the Complaint, a reasonable reading of them reveals that Chief O'Loughlin has alleged not just that he had an expectancy of teaching the SIDS course, **but rather there was an agreement between him and the MBTA that he would indeed be teaching that course.** He has alleged that there was an agreement to hire him to teach the course. He has alleged more than that he had expectations, or that negotiations fell short of a binding agreement. There was **no** "incomplete and imperfect negotiation of a commercial agreement" as is alleged by the MBTA.

Just as importantly, the question of whether or not there was a binding agreement of the sort which would allow Plaintiff to invoke the provisions of M.G.L. c.93A, and whether or not the MBTA had legitimate business reasons for either breaching that agreement, or not going forward with the agreement or considering the agreement to be mere negotiations, is a matter which can only be resolved after discovery is entered into and these facts determined either on summary judgment or after a trial. These questions are not appropriately resolved in deciding a Motion to Dismiss.

In paragraph 1 of the Complaint, Plaintiff has alleged that Defendants took the actions they engaged in against him for "malicious and retaliatory reasons." Plaintiff has alleged in ¶15 of the Complaint that Defendant McCall screamed at the MBTA Academy staff

and stated in vulgar language that Plaintiff was "not setting foot in my academy and that is final." In ¶17 of the Complaint, Plaintiff has stated that Acting Chief Flemming told him that he (Flemming) believed that Defendant McCall was acting in a retaliatory manner. In ¶21 of the Complaint it is alleged that Defendant McCall stated that, "O'Loughlin is not teaching, that is final from the GM, he is not going to set a fucking foot into my academy." In ¶¶ 23 and 24 of the Complaint it is alleged that Defendant McCall has stated that she would cancel the mandatory SIDS Training at the MBTA Police Academy, rather than have it taught by Chief O'Loughlin.

As is alleged throughout the entire Complaint in this action, the gist of what Plaintiff has claimed in this action is that Defendants knew that because of the death of Plaintiff's child from SIDS, Plaintiff was extremely devoted to the teaching of SIDS training at the MBTA Police Academy. Because Defendants knew how important this particular training was to Plaintiff, they chose to retaliate against him by denying him the opportunity to engage in this training. Defendants' conduct in retaliating against Plaintiff in this manner is cruel, it is vile and it is abusive. It is not, as Defendants assert in their Brief, merely a rational decision based on appropriate criteria, not to enter into a particular contractual arrangement. The MBTA's actions are much more than that.

Interfering with contractual rights in order to retaliate against a person for providing testimony in a civil rights matter, in violation of Title VII and MGL Chapter 151B, and in derogation of First Amendment rights, is not simply a "deal that goes sour," as the MBTA would have this Court believe.

Defendants sought to punish Chief O'Loughlin in as emotionally painful a way that they could imagine, for his having been willing to provide truthful testimony for a co-worker in a civil rights action. It is ludicrous for Defendant MBTA to assert that it did not have an improper motive, that it did not engage in an unfair business practice, by breaching its contractual relationship with Chief O'Loughlin under the circumstances alleged in the Complaint.

For the foregoing reasons the Motion to Dismiss must be denied as to Court XI.

## IV.    CONCLUSION.

For all the foregoing reasons it is respectfully requested that the MBTA's Motion to Dismiss be denied in its entirety.

THOMAS J. O'LOUGHLIN
By his Attorney,

Mitchell J. Notis, BBO # 374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
Tel.: (617) 566-2700

DATED: July 13, 2004

## CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that on July 13, 2004 I caused to be served upon counsel for all parties of record, a copy of the within OPPOSITION OF PLAINTIFF THOMAS J. O'LOUGHLIN TO MOTION TO DISMISS OF DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY by first class mail, postage prepaid.

Mitchell J. Notis