UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10257-PBS

---

**THOMAS J. O'LOUGHLIN**
*Plaintiff*

v.

**MASSACHUSETTS BAY TRANSPORTATION AUTHORITY**
and
**ANNE McCALL**
and
**MICHAEL MULHERN**
*Defendants*

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO PERFORM RULE 34 INSPECTION AND TO IDENTIFY ADDITIONAL EXPERT**

Plaintiff Thomas J. O'Loughlin, through counsel, hereby opposes the Motion of Defendants for Leave to Perform a Rule 34 Inspection of Plaintiff's Work Computer and to Identify Additional Expert Regarding Results of Inspection. Additionally, Plaintiff opposes the request made at Page 4 of the Motion, for leave to serve the Motion upon Plaintiff's employer, the Town of Milford.

As is set forth in greater detail below, the Motion and the request to serve Plaintiff's employer must be denied for the following reasons:

1. As Plaintiff is able to produce the computer in question (should the Court grant this Motion) and as that fact has been made known to counsel for Defendants, the only purpose which could be served by the service of this Motion on Plaintiff's employer (the Town of Milford) would be an attempt by Defendants to irreparably damage

1

       Plaintiff's reputation with his employer, no matter what the outcome of either this Motion or this lawsuit eventually is.

2. None of the information which could theoretically be derived from the Rule 34 inspection has any relevance to any issue material to this action. To the extent that Defendants claim that an official (Chief Joseph Carter) of the MBTA Police Department believed that Plaintiff had sent inappropriate emails to a website or a "blog," and based upon that opinion continued the refusal to allow Plaintiff to teach at the MBTA Police Academy, the only issue before the fact finder in this matter would be whether that particular official, Chief Carter, held that belief, and <u>not</u> whether such emails were actually sent. Chief Carter did not even assume office until February, 2003. Also, Chief Carter was never identified as a witness in Defendants' Automatic Disclosures in this action, which were served in February, 2006.

3. By nature of Plaintiff's employment as Chief of Police, the circumstances of his personal life over the past few years and related matters, the inspection of the computer at issue would necessitate examination of confidential Milford Police information, confidential information regarding Plaintiff's divorce, and various attorney client communications.

4. Based upon the Motion to Conduct Inspection, it appears that Defendants had all of the information on which they are now basing the Motion, well over four (4) years ago. This lawsuit was filed over three (3) years ago. It is simply not fair to allow Defendants to delve into private confidential information which is of no relevance to issues in this lawsuit, at the eleventh hour, when they had all of the information necessary to cause them to initiate this request for some three years.

5. Should the Court grant this request, Plaintiff anticipates requesting that discovery be reopened to allow him to engage in whatever discovery is necessary to litigate the issue of when Defendants supposedly knew of the postings at issue, the knowledge held by Chief Carter, whether Defendants considered the postings to be improper in any way, and the extent to which that decision did or did not enter into any determination not to allow him to teach.

**ARGUMENT**

This is an action in which the former Chief of the MBTA Police Department has filed suit against the MBTA and its former General Manager, alleging that his civil rights were violated when his scheduled teaching at the MBTA Police Academy was cancelled due to retaliation against him for having opposed discriminatory practices.

The dates of Chief O'Loughlin's employment by the MBTA, the date of his employment by Milford, the dates of the decisions not to allow him to teach and the dates email transmissions at issue were generated, all bear upon the lack of validity to Defendants' Motion.

1.      Chief O'Loughlin was Chief of the MBTA Police Department until early fall of 2002, when he went to work as Chief of Police for the Town of Milford. At the time he left the MBTA Police Department in the early fall of 2002, Chief O'Loughlin was scheduled to teach a course on Sudden Infant Death Syndrome (SIDS) at the MBTA Police Academy in early January 2003.

The evidence in this case has established that the initial decision to cancel Chief O'Loughlin's work as an instructor for the January 2003 MBTA Police Academy, was made by Anne McCall sometime in the fall/early winter of 2002, but clearly _prior_ to January 2003. The evidence in this case has also established that the decision of Interim Chief Flemming to reinstate Chief O'Loughlin as an Instructor, was made in the late fall/early winter of 2002, _prior_ to January 2003. The evidence in this case has established that the decision of Michael Mulhern to overrule Chief Flemming's decision and to deny Chief O'Loughlin the right to teach at the January 2003 MBTA Academy, was made in the winter of 2002, but once again _prior_ to January 2003.

The basis for Chief O'Loughlin's claims in this action are that the decisions of Anne McCall and Michael Mulhern denying him the right to teach at the January 2003 MBTA Police Academy were taken in retaliation against him for opposing discrimination and retaliation against another MBTA police officer, Patrolman Peixoto.

Accordingly, to the extent that the fact finder in this action needs to determine whether the decision not to allow Chief O'Loughlin to teach at the January 2003 MBTA Police Academy was retaliatory, all of the facts regarding such a determination occurred <u>prior</u> to January 2003.

A review of the emails appended to Defendants' Motion to Conduct Inspection, reveals that the emails span a period of time throughout 2003, with many (if not most) being sent in June or July 2003 or later, some six or seven months or more after the decisions of Anne McCall and Michael Mulhern were made. There is only one email from 2002, dated December 12, 2002. In any event, all of the emails were sent <u>after</u> the various decisions not to allow Chief O'Loughlin to teach.[1]

The information for which the inspection is sought, has absolutely no relevance to this action.

In their Motion, Defendants claim that during the first half of 2003 the MBTA Police Department started investigating the emails which had been sent to "badtransit.com," supposedly because it was believed that the email postings were improper for a variety of reasons. Defendants then claim that Chief Carter was aware of the investigation and the "suspicions" regarding Chief O'Loughlin at "the time that the post-January 2003 decisions were made not to invite Chief O'Loughlin back to teach the SIDS class at the MBTA Police Academy." Based upon this statement by Defendants as well as the facts of this action, it is clear that nothing regarding the emails had any bearing upon the decisions of either Anne McCall or Michael Mulhern not to allow Chief O'Loughlin to continue with his planned teaching in January 2003.

The wording of paragraph 4 of the Motion implies that the decision not to "invite Chief O'Loughlin back" to teach SIDS classes after his January 2003 teaching was cancelled, was made by Chief Carter. However, whether this decision was made by Chief Carter or other MBTA officials, paragraph 4 reveals that at the time these decisions were made during 2003, the decision makers were aware that it was felt that allegedly improper emails were supposedly

---

[1] To the extent it is being claimed that the emails may relate to decisions made by Chief Carter, it must be noted that Chief Carter did not even take office until February, 2003.

4

being sent from a computer at the Milford Police Department and, as is stated at paragraph 3 of the Motion, that "suspicions were strong within the MBTA Police Department leadership that the postings were being made by former MBTA Police Chief O'Loughlin…"

Based upon the chronology of the events in this action and the statements made in Defendants' Motion, it is clear that whether or not Chief O'Loughlin actually sent the emails in question, <u>had absolutely no bearing at all upon the initial decisions not to allow him to teach at the January 2003 MBTA Police Academy</u>.  Just as importantly, the chronology of this action and the statements in Defendants' Motion, reveal that to the extent any decisions were made after January 2003 and before September 2007 with regard to not allowing Chief O'Loughlin to <u>return</u> to teach, such decisions were made upon the <u>belief</u> by the MBTA and the MBTA Police Department that Chief O'Loughlin was responsible for what were viewed as improper emails.

The extremely important point this reveals is that, if Defendants' claims regarding their reasons for not allowing Chief O'Loughlin to teach <u>after</u> January 2003 are to be believed, their decision to refuse to allow Chief O'Loughlin to teach were based solely upon their <u>belief</u> that Chief O'Loughlin was responsible for improper emails, <u>whether or not he had actually sent the emails</u>.

The only issue related to the emails is <u>not who authored</u> the emails, but whether and when Defendants <u>believed</u> that the emails were authored by Plaintiff, and whether Defendants took any actions based upon such beliefs.

This means that to whatever limited extent the sending of these emails may bear upon the legitimacy of the refusal to allow Chief O'Loughlin to teach <u>after</u> January 2003, the issue to be determined by the fact finder in this action is <u>not</u> whether Chief O'Loughlin <u>actually</u> sent those emails, but rather whether the MBTA decision makers <u>believed</u> during 2003 that he had sent them.  Accordingly, the fact of whether or not these emails were actually sent by Chief O'Loughlin, has no bearing upon this action.  There is therefore absolutely no reason to allow

Defendants to perform the examination of Chief O'Loughlin's computer which they have requested.[2]

It bears little elaboration that if the question of whether Chief O'Loughlin sent the emails at issue has no bearing upon the legitimacy of the decision not to let him teach in January 2003, nor any later decision not to let him teach, the emails have no independent relevance to this action. Whether or not the sending of these emails would constitute libel (and Plaintiff denies it does), or any other improper action, is not a matter which would be admissible for the general impeachment of Chief O'Loughlin. To whatever extent the sending of such emails would be deemed some type of "prior bad act," it does not rise to the level of evidence which would be admissible in this action to generally impeach Chief O'Loughlin's credibility.

Based upon all of the above, the issue of whether or not Chief O'Loughlin actually sent the emails at issue has absolutely no relevance to any issue material to this case and accordingly, the inspection of the computer must not be allowed.

2.    In ruling upon the Defendants' Motion, it also must be considered that the computer at issue is one used at work by the Chief of Police of a local police department. As such, the computer at issue contains highly confidential and sensitive police department information. Additionally, as Chief O'Loughlin has used this computer for certain personal communications as well, the computer contains confidential information regarding his divorce proceedings, as well as confidential and privileged communications with various attorneys which are subject to the attorney/client privilege. In all likelihood the computer contains other private and confidential information as well. In light of the extremely limited relevance, if any, of the information sought from the computer, Plaintiff asserts that the private, confidential and privileged information contained on the computer causes Plaintiff's interest in keeping this

---

[2] To the extent that Chief Carter made any decisions regarding not allowing Chief O'Loughlin to teach after January 2003 based upon the belief that improper emails had been sent by Chief O'Loughlin, Chief Carter should have been identified in Defendants' Automatic Disclosure in this action, and the knowledge he held regarding this action should have been stated. To the extent that the requested inspection is granted and the question of Chief Carter's actions becomes relevant to this case, fairness requires that discovery be reopened to allow Plaintiff to take Chief Carter's deposition on these matters.

information private and not disclosing it, to outweigh Defendants' interest in inspecting the computer.

3.      The request to inspect this computer is untimely. Based upon the facts set forth in the Motion, Defendants were aware of their "suspicions" that the emails at issue were being sent from a computer under the control of Chief O'Loughlin, more than four (4) years ago. This lawsuit has been pending for over three (3) years. Defendants even imply in their Motion that their "suspicions" in 2003 that the emails were being sent by Chief O'Loughlin were the reason that Chief O'Loughlin was not invited to teach after January, 2003. In light of the "suspicions" that the Defendants have allegedly held for the entire period of time that the emails at issue were allegedly being sent by Chief O'Loughlin, there is simply no excuse for them having waited until the eleventh hour in this lawsuit to make their inspection requests.

Defendants note in their Brief that although this information may have been in the possession of the MBTA Police Department, they claim that no such knowledge could be imputed to former General Manager Mulhern. That statement is incorrect. As Mr. Mulhern was the General Manager of the MBTA during the time that these emails were supposedly issued and during the time that the MBTA Police Department had its "suspicions," and as all officials in the MBTA Police Department were subordinate to General Manager Mulhern, their knowledge of this matter must be imputed to him. Additionally, for most of the time this lawsuit has been pending, all of the Defendants have been represented by the same attorneys in this action.

Although it is claimed in the Motion that Defendants (and Defendant Mulhern in particular) did not know for certain (in their belief) until September 2007 that the emails at issue had been sent by Chief O'Loughlin, nothing is revealed in the Motion as to <u>why</u> this information could not have been obtained up to three years prior to the filing of this Motion. Specifically, the Motion appears to indicate that at some point in September 2007 technicians under the control of Defendants' counsel performed an analysis of the suspect emails and the emails known to have been sent from Chief O'Loughlin's computer, and decided that Chief O'Loughlin was the person having sent the questioned emails. However, the facts in the Motion also appear to indicate that

this very information was completely available to Defendants and counsel at the time this lawsuit was filed.

Accordingly, as Defendants have waited until the last possible moment to request this inspection, their request must be denied.

4. Plaintiff notes that should the request to inspect be allowed, he will have to seek the Court's permission to depose both the expert to be identified by Defendants as well as to engage in whatever discovery is necessary to litigate the issue of when Defendants should have become aware of the various facts surrounding the email issues, when they actually became aware of those issues and the extent to which those issues played any role in the decision not to allow Chief O'Loughlin to teach at the MBTA Police Academy after January 2003. Accordingly, should this Motion be allowed, fairness requires that discovery in this action be reopened.

5. As an aside in their request for relief in their Motion, Defendants ask to be allowed to examine Chief O'Loughlin's computer with regard to all memos or e-documents constituting the diary/log maintained by Chief O'Loughlin and produced in this litigation, to determine when and whether any edits were made to the diary/log. This request is improper as well. The documents at issue constituting the diary/log were made available to Defendants in the summer of 2006 or earlier, and they had ample opportunity to question Chief O'Loughlin about the creation of these documents during the several days of his deposition. To the extent that there has ever been any reason to allow an inspection of this computer to determine when and whether any edits were made to the diary, that request is now untimely.

6. Although Plaintiff asserts that the request to conduct an inspection and name an expert must be denied in its entirety for the reasons set forth above, Plaintiff notes that the scope of the inspection is unduly broad. To the extent that any of the emails appended to the Motion have any relevance to this action, any inspection should be limited to determining the author of those emails. Based upon the assertions made in the Motion, there is simply no reason to allow an examination of either (a) all emails sent from Chief O'Loughlin's work computer to

badtransit.com, (b) <u>all</u> emails sent from Chief O'Loughlin's work computer using the same screen names as those emails to badtransit.com or (c) <u>all</u> emails from Chief O'Loughlin's work computer sent or copied to MBTA employees. There is absolutely no need for such a broad inspection if all that is sought to be determined is the author of the emails appended to the Motion and whether that author was Chief O'Loughlin.[3]

7.    The request to serve this Motion on Town Counsel/the Town of Milford must be denied. In their Motion, Defendants ask to be allowed to provide this Motion and the various emails at issue to Town Counsel for the Town of Milford. There is no valid reason for this request, and it serves no purpose other than to embarrass Chief O'Loughlin and possibly damage his reputation and endanger his continued employment.

Counsel for Plaintiff has indicated to counsel for Defendants that should this Motion be granted, Chief O'Loughlin has the authority to make the computer at issue available for inspection. Accordingly, there is no procedural or other reason which makes it necessary for the Town or Town Counsel to be served with this Motion. The harm which could be done by such service is potentially severe.

If the Town was to receive the Motion with the serious but <u>unproved</u> allegations made in the Motion against Chief O'Loughlin, Chief O'Loughlin's reputation within the Town of Milford could be irreparably damaged. There is no way of knowing the impact these unproved allegations could have on Chief O'Loughlin's further employment with the Town. There is simply no reason at this point for the Town to be served with this Motion, other than to engage in an attempt to cause harm to Chief O'Loughlin.[4]

---

[3] As was stated earlier, if indeed any inspection is allowed, not only must the scope of the requested inspection be limited as described above, but additionally, there must be adequate protections to ensure that no information is reviewed regarding Milford police business, privileged attorney/client communications or confidential communications sent by Chief O'Loughlin.

[4] In their recently filed Motion to be Excused From Mediation in this matter, Defendants indicate that Defendant Mulhern is "contemplating" filing suit against Thomas J. O'Loughlin for libel, and they further indicate by statements in the motion the extreme degree of bad will directed toward Plaintiff by Defendant Mulhern. It would thus appear that the instant Motion to Inspect is based, at least in part, upon Mr. Mulhern's desire to obtain ammunition for the libel suit he is "contemplating," or to attempt to intimidate Plaintiff.

9

8. Finally, Plaintiff asserts that the whole issue of the emails has no bearing upon this case at this point in time. The only possible relevance the emails could have is not to liability issues, but only to damages issues. Specifically, as has been discussed above, the question of whether the Defendants <u>believed</u> that Chief O'Loughlin authored the emails at issue clearly had no impact on their pre-January 2003 decision not to allow him to teach at the MBTA Police Academy. To the extent that Defendants claim that their belief as to the authorship of the emails had an impact upon Chief O'Loughlin's ability to teach at the Academy after January 2003, this matter would only relate to Chief O'Loughlin's damages due to the continued failure to allow him to teach. The initial revocation of his teaching was, according to Plaintiff, retaliatory. To the extent that the initial retaliation prevented Chief O'Loughlin from teaching in the future, the future refusals would relate only to damages. Accordingly, the inspection request should not even be ruled upon at this time but rather, should be deferred until after the Court rules on the Motion for Summary Judgment to be filed by Defendants. In light of the private and confidential nature of the information sought and the possible damage to Chief O'Loughlin's reputation and employment which the granting of the Motion could cause, Plaintiff urges the Court to either deny the Motion in its entirety, or to defer ruling on the Motion until the issue of damages is clearly at issue in this case.

**CONCLUSION**

For all of the foregoing reasons it is respectfully requested that Defendants' Motion to Perform Rule 34 Inspection of Plaintiff's Work Computer and to Identify Additional Expert, be denied in full.

    Respectfully submitted,

    Plaintiff
    THOMAS J. O'LOUGHLIN
    By his Attorney
    /s/ Mitchell J. Notis

    _____
    Mitchell J. Notis, BBO#374360
    Law Office of Mitchell J. Notis
    370 Washington Street
    Brookline, MA 02445
    Tel.: 617-566-2700

**CERTIFICATE OF SERVICE**

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 9th day of October, 2007.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700